# 2001 DTA 166

**TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL I DE SAN JUAN, PANEL IV**

VANESSA VIGOREAUX ECHEVARRIA
Recurrente

v.

JUNTA DE LIBERTAD CONDICIONAL, ETC.
Recurridos

Núm. KLRA-01-00295

Revisión Administrativa
San Juan, Puerto Rico, a 16 de mayo de 2001

Panel integrado por su Presidente, el Juez Gierbolini,
el Juez Cordero y el Juez Rodríguez Muñiz

Gilberto Gierbolini, Juez Ponente

## TEXTO COMPLETO DE LA RESOLUCION

El 7 de mayo de 2001, la parte recurrente, Vanessa Vigoreaux Echevarría (en adelante Vigoreaux), presentó Solicitud de Revisión Administrativa y nos solicitó la revocación de la Resolución emitida el 5 de abril de 2001, notificada el 6 de abril de 2001, por la Junta de Libertad Condicional (en adelante Junta). Mediante dicha resolución, la Junta declaró No Ha Lugar la Moción de Reconsideración presentada por Vigoreaux y reseñaló la vista de modificación de mandato de libertad bajo palabra para el 7 de mayo de 2001.

También, el 7 de mayo de 2001, Vigoreaux presentó "*Moción Urgente en Solicitud de Paralización de Procedimientos.*" En la misma, Vigoreaux nos solicitó la paralización de la vista pautada por la Junta para ese mismo día.

Por los fundamentos que expondremos, declaramos NO HA LUGAR la "*Moción Urgente en Solicitud de Paralización de Procedimientos*" y DENEGAMOS el recurso de Revisión Administrativa solicitado.

### I

La Sra. Lydia Echevarría Rodríguez (en adelante Echevarría), madre de Vigoreaux, fue encarcelada luego de que fue declarada culpable de haber ordenado el asesinato de su esposo Luis Vigoreaux, padre de Vanesa Vigoreaux. No obstante, disfruta del privilegio de libertad bajo palabra desde el 27 de enero de 2000. Entre las condiciones impuestas por la Junta a Echevarría en su Mandato de Libertad Bajo Palabra (en adelante Mandato) están las siguientes:

"*17. La liberada comparecerá ante la Junta en agosto del 2000, marzo del 2001, octubre del 2001 y mayo del 2002 para vistas de seguimiento. Previo a dichas fechas, el Técnico de Servicios Sociopenales del Programa de Comunidad, designado a la supervisión del caso de epígrafe, deberá someter un Informe de Ajuste y Progreso. El Informe de Ajuste y Progreso de agosto del 2000 deberá incluir, entre otras cosas, el resultado de la evaluación del Negociado de Evaluación y Asesoramiento. Esta estará sujeta a comparecer ante la Junta a vistas subsiguientes.*

*18. La liberada será integrada a la fase de seguimiento del Negociado de Evaluación y Asesoramiento para recibir tratamiento, según determine dicho organismo. Esta cumplirá puntualmente con todas las citas que le requiera el Negociado.*

*19. La liberada no podrá, bajo ninguna circunstancia, tener ningún tipo de relación y/o contacto con el Sr. Luis Vigoreaux Lorenzana y Roberto Vigoreaux Lorenzana.*

*20. Se enmienda la condición número seis (6) del mandato, en cuanto al horario, por lo que no más tarde de las 8:00 p.m. de cada día deberá estar recluida en su hogar. De tener conocimiento la Junta de que la liberada ha incurrido en violación de esta condición o cualquier otra condición del mandato, se procederá inmediatamente a expedir una orden de arresto e iniciar el proceso de revocación del privilegio. Este horario podrá ser prorrogado por el Técnico de Servicios Sociopenales, previa solicitud de la liberada, sólo en caso de surgir una situación relacionada con su salud o empleo."*

El 20 de diciembre de 2000, Echevarría solicitó a su Técnico Sociopenal que modificara la condición número 20 de su Mandato a los efectos de variar el horario de reclusión en su hogar hasta la medianoche (12:00 AM) para poder participar en la obra teatral *"Mantis Religiosa-Confinadas"*. La Técnico Sociopenal evaluó la solicitud de Echevarría y el 19 de enero de 2001 emitió su Informe de Situación Actual y notificó a la Junta que había concedido a Echevarría la extensión de horario solicitada.

En vista de la extensión de horario solicitada por Echevarría, el 26 de enero de 2001, la Junta citó a Echevarría, a su representación legal y a la Técnico Sociopenal a una vista de seguimiento para el 12 de febrero de 2001. Además, la Junta notificó por escrito a las víctimas del delito de la celebración de dicha vista.

El 12 de febrero de 2001, Vigoreaux solicitó, mediante comunicación enviada vía facsímil a la Junta, que la vista pautada para ese día fuera suspendida porque ella no había sido notificada de la misma dentro del término de 15 días laborables establecido por el Artículo 3-C de la Ley de la Junta, 4 L.P.R.A. Sección 1503 (b). La Junta no accedió a lo solicitado por Vigoreaux y precedió a celebrar la vista de seguimiento pautada.

El 15 de febrero de 2001, la Junta emitió Resolución y determinó que el permiso de extensión de horario concedido por la Técnico Sociopenal constituia una enmienda al Mandato sin que las víctimas del delito participaran en la misma. Por lo tanto, la Junta dejó sin efecto dicha extensión de horario y citó tanto a Echevarría como a las víctimas del delito a una vista de modificación de mandato para el 9 de marzo de 2001. En la referida vista de modificación de mandato, Echevarría y Vigoreaux alegaron que esa vista, así como la celebrada el 12 de febrero de 2001, era nula.

Ante los planteamientos de Echevarría y Vigoreaux, la Junta suspendió la vista pautada para el 9 de marzo de 2001 hasta tanto dichos planteamientos fueran resueltos. Luego de analizar los escritos presentados por Echevarría y Vigoreaux, el 5 de abril de 2001, notificada el 6 de abril de 2001, la Junta emitió Resolución, declaró No Ha Lugar los plantearmentos de Echevarría y Vigoreaux y reseñaló la vista de modificación de mandato para el 7 de mayo de 2001.

No conforme, el 7 de mayo de 2001, Vigoreaux compareció ante este Tribunal mediante Solicitud de Revisión Administrativa y nos solicitó la revocación de la resolución emitida por la Junta. En síntesis, Vigoreaux alegó que las actuaciones de la Junta fueron sin jurisdicción porque ella no fue citada a las vistas del 12 de febrero de 2001 y del 9 de marzo de 2001 con 15 días laborables de anticipación, que la Junta erró al permitir que una asesora legal de ésta presidiera la vista del 12 de febrero de 2001 y que la Junta erró al *"negarle a la recurrente su derecho a participar en los procedimientos y a opinar como víctima y a presentar sus planteamientos de carácter jurisdiccional en la vista del 9 de marzo de 2001"*.

Por último, el 7 de mayo de 2001, Vigoreaux también solicitó a este Tribunal que ordenara a la Junta entregar las regrabaciones y transcripciones de las vistas del 12 de febrero de 2001 y del 9 de marzo de 2001. Además, Vigoreaux nos solicitó la paralización de la vista pautada para ese mismo día hasta tanto el presente recurso no fuera resuelto.

## II

De entrada, debemos señalar que el origen de la controversia planteada por Vigoreaux en el presente recurso, podría ser académico. La doctrina de academicidad requiere que durante todas las etapas de un procedimiento adversativo, incluyendo la etapa de apelación o revisión, exista una controversia genuina entre las partes. Entre otras cosas, un caso es académico cuando es pretendido obtener un fallo sobre una controversia disfrazada que en realidad no existe o una sentencia sobre un asunto que, al ser emitida, no podrá tener efectos prácticos. Por tal razón, según la doctrina de academicidad, los tribunales pueden perder su jurisdicción en un caso cuando ocurren cambios en el trámite judicial que hacen que una controversia pierda su actualidad *Empresas Puertorriqueñas de Desarrollo, Inc. v. Hermandad Independiente de Empleados Telefónicos*, __ D.P. R. __ (2000), **2000 J.T.S. 83**, página 1093; *RBR Construction, S.E. v. Autoridad de Carreteras,* __ D.P.R. __ (2000), **2000 J.T.S. 7**, página 463; *Angueira Navarro v. Junta de Libertad Bajo Palabra,* __ D.P.R. __ (2000), **2000 J.T.S. 1**, página 432.

Ahora bien, existen varias excepciones a la doctrina de academicidad. Entre dichas excepciones están las siguientes: (1) cuando es planteada una cuestión recurrente que, por su naturaleza, es muy difícil dilucidarla nuevamente en los tribunales; (2) cuando la situación de hechos ha sido cambiada por el demandado, pero no tiene visos de permanencia; (3) cuando las controversias aparentemente son académicas, pero en realidad no lo son por sus consecuencias colaterales; y (4) cuando el tribunal ha certificado un pleito de clase y la controversia es académica para un miembro de la clase, mas no para el representante de la misma. *Empresas Puertorriqueñas de Desarrollo, Inc. v. Hermandad Independiente de Empleados Telefónicos, supra*, página 1093; *RBR Construction, S.E. v. Autoridad de Carreteras, supra*, página 463; *Angueira Navarro v. Junta de Libertad Bajo Palabra, supra*, página 432.

Por otra parte, para poder determinar si un caso no es académico debido al carácter recurrente o repetitivo de su controversia, los tribunales deben examinar tres factores. Esos factores son la probabilidad de la recurrencia, las partes involucradas en el procedimiento y la probabilidad de que la controversia evada adjudicación o revisión judicial. *Angueira Navarro v. Junta de Libertad Bajo Palabra, supra*, página 432.

En el presente recurso, lo que ocasionó que la Junta celebrara la vista de seguimiento del 12 de febrero de 2001, cancelara la vista de seguimiento del 9 de marzo de 2001 y citara a Echevarría y a las víctimas del delito para la vista de modificación de mandato del 7 de mayo de 2001, fue la solicitud de Echevarría de variar el horario de reclusión en su hogar hasta la medianoche (12:00 AM) y así poder participar en la obra teatral *"Mantis Religiosa-Confinadas"*. Sin embargo, del expediente ante nuestra consideración, surge que la referida obra teatral y sus correspondientes ensayos iban a ser celebrados durante los meses de enero a marzo de 2001. Ello quiere decir, que al momento de celebrar la vista de modificación de mandato pautada por la Junta para el 7 de mayo de 2001, ya no existiría la situación que provocó que Echevarría solicitara una extensión del horario de reclusión en su hogar.

No obstante, como en algún futuro cercano, Echevarría podría solicitar nuevamente a la Junta otra extensión del horario de reclusión en su hogar por motivo de trabajo, resolvemos que esa controversia cae bajo una de las excepciones a la doctrina de academicidad debido a que la misma puede ser de carácter recurrente o repetitivo

Por lo tanto, este Tribunal ejercerá su jurisdicción apelativa y resolverá el recurso ante nuestra consideración.

## III

El Artículo 3-A de la Ley de la Junta, 4 L.P.R.A. Sección 1503 (a), establece los derechos de la víctima de delito. En lo pertinente, el citado artículo dispone lo siguiente:

*"En aquellos procedimientos que se celebren con motivo de la concesión o modificación del privilegio a la libertad bajo palabra, y en la vista final para su revocación, se garantizará a la víctima del delito por el cual*

*fue convicto el liberado o la persona recluida, los siguientes derechos:*

*(1) Comparecer, ya sea oralmente o por escrito, para presentar ante la Junta su opinión sobre:*

*(a) la determinación que en su momento deba tomarse con relación al beneficio del privilegio y,*

*(b) el impacto económico, emocional o físico que ha causado la comisión del delito sobre la víctima y su familia.*

*(2) Estar presente como observador en la vista.*

*(3) Mediante solicitud al efecto, testificar en la vista en ausencia del liberado o confinado."*

A su vez, el Artículo 3-B de la Ley de la Junta, 4 L.P.R.A. Sección 1503 (h), establece los requisitos de notificación de la vista a la víctima de delito. Dicho artículo dispone que:

*"La Junta será responsable de notificar por escrito a la víctima sobre la celebración de la vista con no menos de quince (15) días laborables de anticipación. Dicha notificación deberá enviarse a la última dirección postal conocida de la víctima e incluirá:*

*(1) La fecha, hora y lugar donde se celebrará la vista;*

*(2) una breve explicación sobre las razones para la celebración de la vista, incluyendo mención del delito o delitos por los cuales fue convicto el solicitante;*

*(3) una relación de las disposiciones de ley o reglamento aplicables a la participación de la víctima en el procedimiento, y*

*(4) la dirección y número de teléfono de alguna oficina o funcionario con el cual la víctima pueda comunicarse para recibir mayor información sobre su participación en la vista.*

*El incumplimiento con estas disposiciones constituirá un impedimento para que la Junta ejerza su jurisdicción en el caso particular. Las disposiciones de las secs. 1503a a 1503d de este título aplicarán a los convictos por cualquier delito, aun cuando no sea requerido por la sec. 972h del Título 25."*

Como podemos apreciar, de lo anterior surge que la Junta viene obligada a notificar a las víctimas de delito de la celebración de una vista cuando la misma sea una vista de concesión, modificación o revocación del privilegio a la libertad bajo palabra. Ello quiere decir que la Junta no viene obliga a notificar a las víctimas del delito de la celebración de una vista de seguimiento.

En el presente recurso, Vigoreaux alega que la Junta carecía de jurisdicción para celebrar las vistas del 12 de febrero de 2001 y del 9 de marzo de 2001 y que la Junta erró al *"negarle su derecho a participar en los procedimientos y a opinar como víctima y a presentar sus planteamientos de carácter jurisdiccional en la vista del 9 de marzo de 2001."* Sin embargo, lo cierto es que la Junta sí tenía jurisdicción para celebrar las referidas vistas porque las mismas eran unas vistas de seguimiento; máxime cuando en la Condición 17 del Mandato, la Junta advirtió a Echevarría que ella quedaba citada para la vista de seguimiento del mes de marzo de 2001 y para todas aquellas vistas de seguimiento que no necesariamente estuvieran contempladas dentro de las preestablecidas.

La Junta nunca privó a Vigoreaux de su derecho a participar en los procedimientos, a opinar como víctima de delito y a exponer sus planteamientos. Ante los planteamientos de Echevarría y Vigoreaux a los efectos de que la Junta no tenía jurisdicción para celebrar la vista del 9 de marzo de 2001, ésta suspendió la misma en lo

que dilucidaba los referidos planteamientos y emitía resolución al respecto. Por ello, el 5 de abril de 2001, la Junta emitió resolución, declaró no ha lugar los planteamientos de Echevarría y Vigoreaux y citó a éstas, así como a las demás víctimas del delito, a la vista de modificación de mandato a ser celebrada el 7 de mayo de 2001.

Al citar a Vigoreaux a la vista del 7 de mayo de 2001, la Junta actuó correctamente porque esa vista era de modificación de mandato y porque dicha citación fue realizada con por lo menos 15 días laborables de anticipación a la vista. Por tal razón, Vigoreaux no puede alegar que la Junta negó su derecho a participar en los procedimientos y a opinar como víctima en esa vista de modificación de mandato.

Finalmente, debemos señalar que la vista de seguimiento del 12 de febrero de 2001, es válida, aunque la misma haya sido presidida por una asesora legal de la Junta. Según el inciso (f) del Artículo 3 de la Ley de la Junta, 4. L.P.R.A. Sección 1503, la Junta *"podrá designar examinadores para recibir prueba sobre cualquier caso o asunto pendiente de determinación por parte de la propia Junta."* Conforme a ello, el Presidente de la Junta ejerció su autoridad y designó a una asesora legal para presidir la vista de seguimiento del 12 de febrero de 2001. Por lo tanto, como la Ley de la Junta, *supra*, faculta a ésta a designar examinadores para recibir prueba sobre cualquier caso o asunto pendiente de determinación, y como el Presidente de la Junta actuó dentro de sus deberes y facultades al nombrar a una asesora legal para presidir la referida vista de seguimiento, concluimos que la vista del 12 de febrero de 2001, es válida, aunque la misma haya sido presidida por una asesora legal de la Junta.

### IV

En virtud de los fundamentos anteriormente expuestos, declaramos NO HA LUGAR la *"Moción Urgente en Solicitud de Paralización de los Procedirmentos"* y DENEGAMOS el recurso de Revisión Administrativo solicitado.

NOTIFIQUESE esta determinación en el día de HOY a los abogados de las partes por teléfono, facsímil y correo ordinario.

Lo acordó y manda el Tribunal y lo certifica la Subsecretaria General.

Gladys E. Ortega Ramírez
Subsecretaria General